**No. 13-2464**

In The

United States Court of Appeals

For the Fourth Circuit

**JOHN J. STRAUCH, JR. and JASON ENDLICH,**
*Appellants*,

v.

**EXELON CORPORATION and
CONSTELLATION ENERGY GROUP'S SEVERANCE PLAN**
*Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**No. 13-cv-01543-JKB**

**BRIEF OF APPELLEES**

Azeez Hayne
**MORGAN, LEWIS & BOCKIUS LLP**
1700 Market Street
Philadelphia, PA 19103
215.963.5000
215.963.50001 (Facsimile)

***Attorney for Appellees***

# TABLE OF CONTENTS

**Page**

I.    COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................................................................................................1

II.   COUNTER-STATEMENT OF THE CASE ....................................................1

    A.    Strauch and Endlich's Employment And The Plan ............................2

    B.    The Employees' Administrative Claims And Appeals ........................4

    C.    The Proceedings Below .......................................................................5

III.  SUMMARY OF ARGUMENT ......................................................................6

IV.  ARGUMENT ..................................................................................................9

    A.    Standard Of Review .............................................................................9

    B.    The District Court Correctly Held That The Plan Administrator's Interpretation Of The Plan Was Reasonable. ..........11

    C.    The Employees' Counterarguments Fail............................................14

          1.    The Plan does not unambiguously preclude the Plan Administrator's interpretation of "Successor." ......................14

          2.    Other Fact disputes and inferences did not preclude summary judgment.................................................................17

          3.    The district court properly denied the Employees' request for discovery pursuant to Rule 56(d). .....................21

V.    CONCLUSION.............................................................................................25

-i-

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.,*
93 F.3d 149 (4th Cir. 1996) .................................................................9

*Bernstein v. CapitalCare, Inc.,*
70 F.3d 783 (4th Cir. 1995) ...................................................9, 10, 22

*Booth v. Wal-Mart Stores, Inc., Assocs. Health & Welfare Plan*,
201 F.3d 335 (4th Cir. 2000) .......................................................11, 17

*Breton, LLC v. Graphic Arts Mut. Ins. Co.*,
446 F. App'x 598 (4th Cir. 2011) ..............................................14, 15

*Brogan v. Holland,*
105 F.3d 158 (4th Cir. 1997) ..........................................................9, 10

*Doe v. Grp. Hospitalization & Med. Servs.,*
3 F.3d 80 (4th Cir. 1993) ...................................................................9

*Evans v. Eaton Corp. Long Term Disability Plan*,
514 F.3d 315 (4th Cir. 2008) .............................................................10

*Fagan v. Nat'l Stabilization Agreement of Sheet Metal Indus. Trust Fund,*
60 F.3d 175 (4th Cir. 1995) ...............................................................10

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989)............................................................................9

*Gates, Hudson & Assoc., Inc., v. Fed. Ins. Co.*,
141 F.3d 500 (4th Cir.1997) ...............................................................15

*Haley v. Paul Revere Life Ins. Co.,*
77 F.3d 84 (4th Cir. 1996) ..................................................................10

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004) ...............................................................4

*Helton v. AT&T Inc.*,
709 F.3d 343 (4th Cir. 2013) ........................................................22, 23

## <u>TABLE OF AUTHORITIES</u>
(Continued)

**Page(s)**

*Nat'l Wildlife Fe'n v. Hanson*,
    859 F.2d 313 (4th Cir. 1988) .......................................................................11

*Strag v. Bd. of Trs., Craven Cmty. Coll.*,
    55 F.3d 943 (4th Cir. 1995) ....................................................................22, 23

### STATUTES

29 U.S.C. §§ 1001 *et seq.*...............................................................................1

29 U.S.C. § 1132(a)(1)(B) ............................................................................5

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)..................................................................................5

Fed. R. Civ. P. 12(d) ......................................................................................5

Fed. R. Civ. P.  56(d) ..................................................................1, 8, 22, 23

# I.
## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the district court properly granted summary judgment denying plaintiffs' ERISA[1] claim for severance benefits in connection with the sale of the power plants they supported, where the denial was based on the severance plan's exclusion for employment by a "Successor" and the plaintiffs were hired by an affiliate of the buyer pursuant to the terms of the sale agreement and conditioned on the closing of the sale.

2.    Whether the district court properly granted summary judgment in this ERISA benefits case based on the administrative record before the plan administrator and the undisputed material facts before the district court without allowing plaintiffs leave to take discovery pursuant to Federal Rule of Civil Procedure 56(d) where plaintiffs did not and could not argue that the requested discovery was "necessary" for the district court to adequately assess the plan administrator's decision and "essential" to justify their opposition to the motion.

# II.
## COUNTER-STATEMENT OF THE CASE

This is an appeal from an order granting the defendants summary judgment on the plaintiffs' claims for benefits pursuant to an ERISA-governed severance plan.  As Judge Bredar correctly found, the material facts are not in dispute and the

---

[1]  ERISA is the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*.

plan administrator's decision to deny the plaintiffs' claims for benefits because they were offered and accepted positions with a "Successor" was reasonable.

## A.     Strauch and Endlich's Employment And The Plan

Jason Endlich and John J. Strauch, Jr. (collectively the "Employees") were employed by Constellation Energy Group, Inc. ("Constellation"). (JA 2.) Constellation merged with Exelon Corporation ("Exelon") in March 2012. (*Id*.) As a result of the merger, Strauch and Endlich became Exelon employees. (*Id*.) Constellation, and later Exelon, maintained the Constellation Energy Severance Plan (the "Plan" and, together with Exelon, the "Defendants" or "Appellees"). (JA 4.)

Under the Plan, "Employees" like Strauch and Endlich could be entitled to Plan benefits *only* if they met the eligibility criteria set forth in either Plan Section 2(A) or 2(D) *and* did not fall into one of the Plan's ineligibility criteria. (JA 22-24.) In particular, the Plan provides that employment or an offer of employment with a "Successor" renders an Employee ineligible for severance benefits. (JA 20 at § 1(E); JA 22 at § 2(B); JA 24 at § 2(D)(ii)(b).) A "Successor" is defined as "any employer who purchases an Employer subsidiary/affiliate either through a stock or asset purchase." (JA 22 at § 1(Y).)

In August 2012, Exelon sold three power plants to Raven Power Holdings, LLC ("Raven"). (JA 2, 39.) As a result of the sale, Strauch and Endlich lost their

positions at Exelon.  (JA 3.)  The Sale Agreement generally prohibited the parties

from soliciting each others' employees for one year, (JA 50 at § 5.9(b)), but

specifically authorized the "Buyer or one if its Affiliates" to "offer employment to

each … Off-Site Employee that it wishes to offer employment" within a specified

time frame.  (JA 49 at § 5.9(a).)  Strauch and Endlich were Off-Site employees,

(JA 73-74), and Raven's affiliate, Topaz Power Management, LP ("Topaz"),

offered them employment conditioned on the closing of the sale.  (JA 85, 96.)  On

November 30, 2012, Strauch and Endlich's employment with Exelon ceased, and

they began work with Topaz.  (JA 2, 76, 88.)

 It is undisputed and undisputable that Topaz was an affiliate of Raven.  Both

were owned by the same company, Riverstone Holdings LLC ("Riverstone").

Defendants asserted this as an undisputed material fact below, (Dkt. 25 at 3), and

the Employees did not dispute it. (Dkt. 24.)  In his administrative appeal to the plan

administrator, Strauch acknowledged this affiliation but argued it was not an

adequate basis to deny his claim for severance benefits.  (JA 77.)  In addition, a

Federal Energy Regulatory Commission ("FERC") order regarding the sale

transaction at issue here confirms that the power plants that were sold "are

managed by an affiliate of the Acquiring Companies, Topaz Power Management,

LP." (Addendum at pp 2-3.)[2]

## B.  **The Employees' Administrative Claims And Appeals**

After they began their employment with Topaz, Strauch and Endlich filed

administrative claims for severance benefits pursuant to Plan Article 5.  (JA 80-81,

95.)  Despite their continued employment with Topaz, the Employees claimed they

were entitled to Plan benefits arguing that only Raven, and not its affiliate Topaz,

could be considered a "Successor" under the terms of the Plan. (JA 77-79, 89-91.)

The Plan gives the Plan Administrator broad discretion in deciding claims,

appeals, and matters of Plan interpretation:

> The Plan Administrator shall have the exclusive right to make
> determinations with respect to the administration *and interpretation of
> the Plan* … including, but not limited to, *the power to (i) interpret the
> provisions of the Plan,* (ii) determine Employees who are eligible to
> participate in the Plan, and (iii) grant or deny benefits under the plan,
> and if granted, to determine*, in his/her discretion*, the amount,
> duration, and nature of the benefits under the Plan…. Any *such
> interpretations* and determinations shall be final, conclusive and
> binding on the Employer, Participants and Employees.

(JA 30 at § 4(C).) (emphasis added).  The Plan also provides that "[a]ll decisions

by the Plan Administrator regarding eligibility for benefits under the Plan shall be

final and conclusive except as set forth in this Article 5."  (JA 31 at § 5(A).)

After a review of the Employees' arguments, the Plan document, and

documents related to the corporate transactions, the Plan Administrator denied

---

[2] The Court may properly take judicial notice of the FERC order because it is a
matter of public record.  *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004).

4

their claims. (JA 76, 80, 88, 92.)  Pursuant to the Plan terms, the Employees

appealed the denial.  (JA 77-79, 89-91.)  The Plan Administrator again reviewed

the relevant materials, and again rejected Strauch and Endlich's interpretation of

the Plan and found that they were employed by a Successor under the Plan.  (JA

76, 80, 88, 92.)

## C.     <u>**The Proceedings Below**</u>

In May 2013, the Employees filed a complaint in the District of Maryland

seeking benefits allegedly due under the terms of the Plan pursuant to 29 U.S.C. §

1132(a)(1)(B).  (JA 1.)  In response to the Complaint, Defendants filed a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the

Employees had not pled and could not plead facts sufficient to establish that the

Plan Administrator had abused her discretion when she denied the Employees'

request for severance benefits under the terms of the Plan.

After briefing, the district court notified the parties of its intent to convert

Defendants' motion to dismiss into a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 12(d).  (Dkt. 23.)  The district court provided the

parties two weeks in which to present any additional material pertinent to the

motion.  (*Id*.)  In response, the parties filed supplemental memoranda of law and

affidavits in support of their respective positions.  (Dkts. 24-25.)

On November 19, 2013, the district court granted Defendants' motion,

holding that the Plan Administrator had not abused her discretion when she denied the Employees' request for severance benefits, and entered judgment in favor of the Defendants.  (JA 188-128.  )  Strauch and Endlich then filed this appeal on December 4, 2013. (JA 129.)

### III.
### SUMMARY OF ARGUMENT

It is black letter law under ERISA that, because the Plan grants the Administrator discretion to interpret its terms and to make eligibility determinations, the Court will overturn the Plan Administrator's decision only if it was an abuse of discretion.  Therefore, the Plan Administrator's decision will not be disturbed if it is reasonable, even if this Court would have come to a different decision independently.

This standard is dispositive of the Employees' claims in light of the undisputed material facts.  All agree that the Plan renders participants ineligible for severance benefits where they are offered employment with a "Successor."  A "Successor" is defined as "any employer who purchases an Employer subsidiary/affiliate either through a stock or asset purchase."  It is undisputed that Raven purchased the power plants at issue here, and that Raven's affiliate Topaz hired the Employees pursuant to the terms of, and contingent upon, Raven's purchase of the plants.  It is further undisputed that the Plan Administrator determined that Topaz fell within the scope of a "Successor" under the Plan

because of its "close relationship" or "nexus" to Raven.  Under these circumstances, the district court concluded that it was not unreasonable for the Plan Administrator to find that the Employees' employment by Topaz constituted employment by a "Successor."  Indeed, as the district court correctly found, the Plan Administrator's interpretation of the term "Successor" was consistent with both other defined terms in the Plan as well as similar provisions found within ERISA itself.  (JA 125.)

The Employees now argue that the district court's decision to grant summary judgment was inappropriate for three reasons.  First, they contend that the Plan's definition of the term "Successor" unambiguously precluded the Plan Administrator's interpretation that Topaz was a Successor.  But the Employees' own arguments during the administrative claim process acknowledged that the definition of "Successor was ambiguous and subject to interpretation.  As such, the Plan Administrator had disrection to interpret the term and, as the district court found, her interpretation was reasonable.

*Second*, the Employees contend they should have benefited from certain inferences in deciding the summary judgment motion.  But the inferences to which they claim entitlement are either irrelevant (as the district court found) or contradicted by the undisputed material facts.  Furthermore, their argument is inapposite to the interpretation of an ERISA plan, where it is actually the Plan

7

Administrator's determinations which are entitled to deference. Indeed, the Employees are not permitted to adduce new facts or factual inferences not presented to the Plan Administrator.

*Third*, the Employees claim they should have been allowed to take discovery pursuant to Rule 56(d). This argument fails under both ERISA and Rule 56(d). In an ERISA case, plaintiffs can obtain discovery beyond the administrative record only if that discovery is "necessary" to permit the court to adequately review the plan administrator's decision. Likewise, a nonmovant is entitled to take discovery in response to a motion for summary judgment only if they demonstrate that the requested discovery is "essential" to justify their opposition to the motion.

In this case, the Employees entirely failed to argue, much less establish, that the discovery they sought was "necessary" to enable a review of the Plan Administrator's decision and "essential" to justify their opposition. On the contrary, the Employees argued affirmatively that their other arguments were sufficient to preclude summary judgment.

Accordingly, as detailed below, the district court's well-reasoned judgment should be affirmed.

# IV.
# ARGUMENT

## A.    Standard Of Review

Where a plaintiff is appealing the grant of summary judgment, the Fourth Circuit engages in a *de novo* review, applying the same standards that the district court employed. *See Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir. 1997).  In cases where the benefit plan grants the administrator discretionary authority to determine eligibility or to construe the terms of the plan, the decision must be reviewed for abuse of discretion.  *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 115 (1989); *Brogan,* 105 F.3d at 161; *Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.,* 93 F.3d 149, 152 (4th Cir. 1996); *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir. 1995); *Doe v. Grp. Hospitalization & Med. Servs.,* 3 F.3d 80, 85 (4th Cir. 1993).

Under this deferential standard, the administrator's decision will not be disturbed if it is reasonable, even if this Court would have come to a different conclusion independently.  *See Bruch,* 489 U.S. at 115; *Brogan,* 105 F.3d at 161; *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir. 1996); *Bernstein,* 70 F.3d at 787; *Fagan v. Nat'l Stabilization Agreement of Sheet Metal Indus. Trust Fund,* 60 F.3d 175, 180 (4th Cir. 1995); *Doe,* 3 F.3d at 85.  A decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan,* 105 F.3d at 161 (quoting *Bernstein,*

9

70 F.3d at 788).

In *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008), this Court confirmed the significance of the deference afforded to a plan administrator.  Reversing the district court's award of benefits to a participant, the Fourth Circuit noted that the deference afforded an administrator protects important values such as "the enhanced prospects of achieving consistent application of those terms and provisions that results; the desire of those who establish ERISA plans to preserve at least some role in their administration; and the importance of ensuring that funds which are not unlimited go to those who, according to the terms of the plan, are truly deserving."  *Id.*  Because of these values, "the language of discretion in an ERISA plan is a message to courts, counseling not judicial abdication, to be sure, but a healthy measure of judicial restraint."  *Id.*

Although they argued below that the Plan Administrator did not have discretion to interpret the Plan under the "plan document rule" and the doctrine of *contra proferentum*, the Employees do not make those arguments again in their opening brief.  Accordingly, they have waived those arguments.  *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988).  Even if those arguments were not waived, however, they fail for the reasons cogently articulated by the district court below.  (JA 122-123.)

**B.**    **The District Court Correctly Held That The Plan Administrator's Interpretation Of The Plan Was Reasonable.**

This Court has provided eight factors for analyzing whether a plan administrator has abused its discretion. *Booth v. Wal-Mart Stores, Inc., Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).[3]  Under these standards, the district court correctly found that the Employees had failed to adduce facts sufficient to demonstrate that the Plan Administrator abused her discretion in denying their claims for benefits.

The Plan Administrator reasonably interpreted the term "Successor" to include an affiliate of the direct purchaser who was authorized to hire the Employees solely pursuant to the explicit terms and conditions of the related sale agreement.  (JA 76, 88.)  The Plan Administrator found that the distinction between Raven and Topaz under these circumstances was "one of form over substance" and that the "close relationship" or "nexus" between the two entities was sufficient to qualify Topaz as a "Successor" under the Plan.  (*Id.*)

The district court properly found that the Plan Administrator's interpretation

---

[3] The *Booth* factors are: (1) the language of the plan;  (2) the purposes and goals of the plan;  (3) the adequacy of the materials considered to make the decision and the degree to which they support it;  (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;  (5) whether the decisionmaking process was reasoned and principled;  (6) whether the decision was consistent with the procedural and substantive requirements of ERISA;  (7) any external standard relevant to the exercise of discretion;  and (8) the fiduciary's motives and any conflict of interest it may have.

of the Plan language was reasonable.  *First*, the district court correctly noted that

"the Plan Administrator's interpretation is consistent with the language used in the

definition of a 'Successor' and with other provisions in the [Severance] Plan:"

> The Plan Administrator interpreted the term "Successor" to include
> the direct purchaser, Raven Power, and its affiliates, including Topaz.
> A "Successor" is defined under the [Severance] Plan as "any
> employer who purchases an Employer subsidiary/affiliate either
> through stock or asset purchase."  The term "Employer" is defined
> elsewhere in the [Severance] Plan as "Constellation Energy Group
> *and any subsidiary/affiliate of* Constellation Energy Group…"
> Accordingly, the term "Successor" may be interpreted by reading the
> word "employer," within the definition of a "Successor," consistently
> with the definition of "Employer" elsewhere in the [Severance] Plan.
> A "Successor" would, therefore, include the direct purchasing
> employer, Raven Power, and any subsidiary/affiliate of that employer,
> which, in this case, is Topaz.

(JA 123-124 (citations omitted, emphasis in original).)

> *Second*, the district court also accurately concluded that the "Plan

Administrator's interpretation is consistent with provisions found in ERISA itself:"

> For example, ERISA provides that employees employed by
> corporations that are members of a "controlled group of corporations"
> or that are "under common control" shall be treated as employed by a
> "single employer."

(JA 124 (citations omitted).)

Likewise, the Plan Administrator's interpretation of the term "employer" is

consistent with the Employees' own usage of the term in this case.  Before the sale

of the plants to Raven, Strauch and Endlich were directly employed by

Constellation Power Source Generation, Inc.  (Dkt. 14 at 11 n.5.)  Yet their

12

Complaint repeatedly pleads that they were employed by (and terminated employment from) Constellation Energy Group, Inc. and/or Exelon Corporation, which are affiliates of Constellation Power Source Generation, Inc. (JA 8, 9.) Thus, aspects of the Employees' own pleadings treated employment by an affiliate of an entity in this context as employment with the entity itself.

Finally, the Plan Administrator's interpretation is also consistent with the negotiated terms of the Sale Agreement with Raven. That Agreement prohibits the parties from "directly or indirectly, in any manner whatsoever" soliciting each others' employees for a period of one year following the sale. (JA 50 at § 5.9(b).) However, the Sale Agreement also permits the "Buyer or one of its Affiliates" to offer a job to each "each Off-Site Employee that it wishes to offer employment within sixty (60) days after the execution of this Agreement …." (JA 49 at § 5.9(a).) Thus, Topaz could *only* offer employment to Strauch and Endlich because of the Sale Agreement itself – which obviously contemplated that Off-Site Employees like Strauch and Endlich could be employed by the "Buyer *or one of its Affiliates*." Indeed, this is reflected in the Employees' offer letters from Topaz, which condition their employment upon the closing of the sale. (JA 85, 96.)

In short, the district court properly found that the Plan Administrator had acted reasonably when determining that Strauch and Endlich's employment with Topaz rendered them ineligible for severance under the Plan.

13

**C.    The Employees' Counterarguments Fail**

The Employees make three arguments on appeal seeking reversal of summary judgment. Their arguments, however, are inconsistent with their own prior contentions and with the undisputed material facts, or are irrelevant and should be rejected.

1.    The Plan does not unambiguously preclude the Plan Administrator's interpretation of "Successor."

The Employees first argue that the Plan Administrator's interpretation of the definition of "Successor" conflicts with the unambiguous terms of the Plan. They contend that the word "employer" in the definition of the term "Successor" can only be interpreted to mean Raven, and must exclude any Raven affiliate who employs acquired employees pursuant to an acquisition by Raven.

This argument fails because it is evident that the definition of "Successor" is not unambiguous with respect to whether it includes affiliates of a direct purchaser. "A term is unambiguous only if, within its context, it is not susceptible to more than one meaning." *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, 446 F. App'x 598, 603 (4th Cir. 2011) (quoting *Gates, Hudson & Assocs., Inc., v. Fed. Ins. Co.*, 141 F.3d 500, 502 (4th Cir.1997)). Here, there are at least three possible interpretations of the definition of "Successor."

The Employees now advocate that the term "employer" in the definition of "Successor" may *only* be interpreted to mean the buyer. (Appellants' Br. at 13.)

14

But this is not the only interpretation of the Plan they have advocated in this case. Indeed, Strauch argued in his administrative appeal that the term "Successor" included both Raven Power Holdings LLC – the actual "Buyer" – and also its subsidiary, Raven Power Group LLC, which employs certain other employees that Raven was required to hire per the PSA.  (JA 77.)  Given the admission that "Successor" may reasonably be interpreted to include subsidiaries, it is impossible to conclude that the Plan's unambiguously precludes the Plan Administrator's interpretation that other affiliates of the buyer also may be Successors.[4]

The Employees' other arguments simply confirm this conclusion.  Although the Employees purport to argue that the Plan *unambiguously* precludes the Administrator's interpretation of "Successor," their brief quickly devolves into a series of arguments based on *inferences* and *interpretations* of this term.  Thus, the Employees variously contend that:

- "it was a mistake *of contract interpretation* for the district court to conflate the term of art 'Employer' with the Plan's use of the phrase 'employer' to define a 'Successor.'"  (Appellant's Br. at 18 (emphasis added).)

---

[4]  Strauch's admission dooms some of the Employees' other arguments as well. They contend that "the district court should have reasonably inferred from the 'form over substance' comment that a strict reading of the Plan indicated that Raven was the only 'Successor.'"  (Appellants' Br. at 13 n.1.)  This "strict reading" is what the Employees now advocate.  But that interpretation conflicts with Strauch's interpretation that "Successor" includes subsidiaries.  The Plan language simply does not unambiguously preclude either Strauch's "subsidiary" interpretation or the Plan Administrator's "affiliate" interpretation.

15

- "the district court erred in suggesting that the 'controlled group' concept governs the Plan's definition of a 'Successor.'" (*Id.* at 18 n.5.)

- "the use of two distinct phrases in the same definition ('employer' and 'Employer subsidiary/affiliate') gives rise to a *strong inference* that they have different – not identical – meanings." (*Id.* at 19 (emphasis added).)[5]

- "The district court's failure to *draw that inference* in the Appellants' favor on summary judgment compounded its mistake of ignoring the plain language of the plan." (*Id.* (emphasis added).)

Each of these arguments is based not on any *unambiguous* Plan language, but rather on the Employees' preferred *interpretations* of or *inferences* drawn from the Plan's language. These arguments run headlong into the deference owed to the Plan Administrator's interpretation. As the district court noted, and the Employees consistently ignore, unlike an ordinary contract case, in an ERISA case like this one, the courts will defer to the Plan Administrator's interpretation of the Plan unless it constitutes an abuse of discretion. The sole question is whether the Plan Administrator's decision was *reasonable*, not whether it was the most reasonable, or even whether the court itself would have reached a different conclusion. (JA

---

[5] The Employees did not make this argument to the district court below and, accordingly, it has been waived. Even if it was not, their interpretation of the Plan is irrelevant (as discussed above) for the Plan Administrator's interpretation is entitled to deference. Nor is their interpretation even the best one. The term "Employer" means "Constellation Energy Group and *any subsidiary/affiliate of Constellation Energy Group*." (JA 20 (emphasis added).) The addition of the phrase "subsidiary/affiliate" to "Employer" in the definition of "Successor" is thus superfluous. If anything, however, it shows the drafter's intention to ensure that subsidiaries and affiliates of an "Employer" are covered – which, as the district court found, is consistent with interpreting "employer" to include affiliates.

16

124 citing *Booth*, 201 F.3d at 341.)

      2.    Other Fact disputes and inferences did not preclude summary judgment.

The Employees' second argument is that "the district court was obligated to draw all reasonable inferences in favor of the non-moving parties" and the "district court's failure to do so was error." (Appellants' Br. at 19.)[6] Here, the Employees assert the outrageous argument that the district court essentially made up the concept that Raven and Topaz were affiliates, despite the "unrebutted evidence that the only relationship between [Raven] and Topaz was contractual" (Appellants' Br. At 21), in order to explain the Plan Administrator's reliance on the "close nexus" and "close relationhip" between the two entities, rather than construing these purportedly ambiguous terms in the Employees' favor.

Thus, they argue that because "nothing in [the] denial letters – or the entire summary judgment record – explains the source of these two terms" (Appellants' Br. at 19.) . . . "the district court did not address these terms, and instead *chose* to describe Topaz as an 'affiliate' of Raven Power" . . . (Appellants' Br. at 14,

---

[6] This argument suffers from a threshold defenct. As the district court correctly found (and as discussed above), the Plan Administrator's determinations are presumed to be correct unless they are unreasonable. (JA 120-122 (discussing the appropriate standard of review).) This presumption clearly applies at the summary judgment stage. *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 126 (4th Cir.1994) (affirming district court's application of deference in granting summary judgment). The Employees' contention that they are entitled to factual inferences in this case, therefore, is mistaken.

emphasis added) . . . [b]ut the district court's insertion of the word 'affiliate' has no

basis in the Plan, the Plan Administrator's decisions denying benefits, or the record

in this case." (Appellants' Br. at 17).

This entire argument is nothing but sophistry. In context, the source of the

phrases "close nexus" and "close relationship" is perfectly plain. The Plan

Administrator denied the Employees' administrative claims because they "were

offered and accepted a job with the Successor owners [sic] operating company,"

*i.e.* because Topaz was an affiliate of Raven and was considered a Successor. (JA

80, 92.) The Employees obviously understood the argument. In the administrative

appeal of this determination, Strauch specifically argued that:

> It doesn't say if an *affiliate* of the owner or Buyer offers me
> employment, I am not eligible…. The Plan defines 'Successor' as 'an
> employer who purchases an Employer subsidiary/affiliate through a
> stock or asset purchase"…. It does not include *affiliates* in the
> definition.

(JA 77-78 (emphasis added).) The Plan Administrator rejected this argument,

explaining that:

> Your appeal goes to great length to distinguish Raven Power Holding,
> LLC from Topaz Power Management. I find the distinction to be one
> of form over substance. Instead, I find that there is a close nexus
> between the two entities such that we consider your employer to be a
> successor.

(JA 76.) The Employees understood then, and they understand now, that the

phrases "close nexus" and "close relationship" referred to Topaz's corporate

18

affiliation with Raven.

Moreover, Defendants repeatedly asserted as an undisputed material fact below that "Topaz is an affiliate of Raven." (e.g. Dkt. 25 at 3.) In their own filings, the Employees offered more than three pages of undisputed facts in 24 numbered paragraphs. (Dkt. 24 at 5-8.) Not a single one disputed that Topaz was an affiliate of Raven, much less claimed that the "only relationship" between Topaz and Raven "was contractual." Their only argument was that Topaz was not a subsidiary of Raven. (Dkt. 17 at 11.) Having failed to dispute this fact below, they cannot do so now.

In short, the Employees did not dispute that Topaz was an affiliate of Raven below because they knew this fact was undisputable. Indeed, Strauch admitted in his administrative appeal that Topaz was a "Riverstone entity" – *i.e.* an affiliate of Raven, which is also owned by Riverstone. (JA 77.) This, of course, is consistent with the findings in the FERC Order authorizing the sale of the Exelon plants to Raven. (*See* Addendum hereto.)[7]  This Order establishes: (1) that "Each of the … Acquiring Companies … is a wholly owned subsidiary of Raven Power Holdings LLC", (2) that Raven Power Holdings LLC is ultimately owned by Riverstone Holdings LLC, and (3) that Topaz Power Management LP is "an affiliate of the Acquiring Companies". (Addendum at 2-3.) Thus, the only question before the

---

[7] As discussed in footnote 2 above, the Court may properly take judicial notice of this Order.

district court was whether the Plan Administrator's decision was reasonable.  As the district court found, it plainly was.

Finally, the Employees argue that the district court somehow erred in failing to "address the inconsistency between the articulated rationale – 'to cover a period of unemployment' – with the prior occasion in which change in control benefits were paid notwithstanding continuous employment."  (Appellants' Br. at 20-21.)  Notwithstanding the Employees' allegation that the district court "failed to address" their factual proffer, the district court actually accepted these facts in ruling on the motion, but found them to be distinguishable and thus irrelevant:

> Plaintiffs point to a prior application of the [Severance] Plan to argue that the Plan Administrator's decision was inconsistent with the earlier interpretations of the [Severance] Plan.  This prior interpretation involved approximately 43 Constellation employees who were terminated when the lease for the power plant they supported ended and the employees were hired by the new lessee of the facility, Olympus Power.  The Plan Administrator granted severance benefits to those Constellation employees because Olympus *had not purchased* any assets from Constellation, and therefore, did not meet that element of the definition of "Successor."  Here, conversely, there is no dispute as to whether there was a "stock or asset *purchase*" between Constellation and Raven Power; the dispute involves the Plan Administrator's finding that Raven Power and Topaz are a single "Successor."  Accordingly, the evidence regarding the Olympus Power interpretation is of no moment to the present case and does not demonstrate that the Plan Administrator's decision as to these Plaintiffs was inconsistent with any prior interpretations of the [Severance] Plan.

(JA 125 (emphasis in original, citations omitted).)  Ironically, moreover, while the Employees claim that the district court "failed to address" their argument based on

20

the Olympus Power severance award, their appeal brief entirely ignores the district court's determination that, based on their own pleadings, the Olympus Power severance award was distinguishable and irrelevant. In short, the Employees' reliance on facts related to the Olympus Power lease is misplaced and did not preclude summary judgment.[8]

3. The district court properly denied the Employees' request for discovery pursuant to Rule 56(d).

Finally, the Employees argue that "[i]n the event that the Plan's definition of 'Successor' was found to be ambiguous, there were numerous issues for which discovery under Fed. R. Civ. P. 56(d) was appropriate before the district court could enter summary judgment." (Appellants' Br. at 23.) This argument fails because it ignores the very narrow scope of discovery appropriate in ERISA cases reviewed under the abuse of discretion standard, as well as the heavy burden a party shoulders in seeking discovery in response to a summary judgment motion.

Even before a summary judgment motion is filed, discovery is sharply curtailed in ERISA benefits cases. "Generally, consideration of evidence outside

---

[8] The Employees also claim there was something wrong with the "articulated rationale of the Plan Administrator that the 'intent' of the Plan 'was to provide pay continuation for employees whose jobs are eliminated and to cover a period of unemployment.'" (Appellants' Br. at 20.) But the Plan Administrator did not deny their claims simply because Strauch and Endlich were employed. Rather, the Administrator denied the claims because "you accepted a position with a *successor* in September 2012 prior to your position ending due to the sale." (JA 76, 88 (emphasis added).)

of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013); *see also, e.g., Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995). A district court may consider evidence outside the administrative record only when: (1) "such evidence is *necessary* to adequately assess the *Booth* factors," *and* (2) "the evidence was known to the plan administrator when it rendered the benefits determination." *Helton*, 709 F.3d at 356 (emphasis added).

Furthermore, once a summary judgment motion is filed, the nonmoving party bears a heavy burden to establish that it is entitled to take discovery before responding to the motion. The nonmoving party must show by affidavit or declaration that "for specified reasons, it cannot present facts *essential* to justify its opposition." Fed. R. Civ. P. 56(d). Discovery is not appropriate where "the additional evidence sought for discovery would not have *by itself* created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (emphasis added).[9] Thus, the nonmovant bears the burden of "specifically alleg[ing] why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment." *Id.*

The Employees' Rule 56(d) affidavit fell woefully short of meeting these

---

[9] *Strag* was decided under what was then Rule 56(f), which is now codified as Rule 56(d).

burdens.  It sought discovery on numerous topics.  (Appellants' Br. at 23-24.)  But the Employees were essentially seeking to engage in a broad fishing expedition.  They made no effort to explain the specific evidence they hoped to adduce.  They did not explain how this supposed evidence was "necessary to adequately assess the *Booth* factors," or establish that it was in the Plan Administrator's possession.  *Helton*, 709 F.3d at 356.  Nor did they "specifically allege" how this information would have been sufficient "by itself" to create a "genuine issue of material fact sufficient to defeat summary judgment."  *Strag*, 55 F.3d at 954.

The Employees' failure even to attempt to meet this burden is not surprising for two reasons.  *First*, they did not claim that discovery was "essential to justify [their] opposition," because the Employees had informed the district court that their other arguments were sufficient to defeat summary judgment.  (Dkt. 24 at 15 ("The plaintiffs believe they have supplied the Court with ample legal and factual grounds to deny summary judgment.").)  *Second*, it is clear that their requested fishing expeditions would *not* have yielded evidence "by itself" sufficient to defeat summary judgment.

The Employees wanted discovery of "all circumstances in which change of control benefits were paid."  (Appellants' Br. at 23.)  Obviously, however, situations in which payments of change of control benefits were made where there was no "stock or asset purchase" and thus no "Successor" are wholly irrelevant

23

here. Moreover, the Employees did not allege any inconsistent treatment with respect to payment of severance benefits other than the Olympus Power lease, which their own pleadings demonstrated was inapposite to this case. (JA 99-102.)

The Employees also asked for discovery regarding "whether, and to what degree, the obligation to pay severance was addressed by the Appellees during the merger discussions or negotiations." (Appellants' Br. at 23.) But discovery of purely hypothetical discussions regarding severance in general between Exelon and Constellation at the time of the merger is irrelevant to whether the Plan Administrator's interpretation of the term "Successor" was reasonable. In any event, the outcome of any such severance negotiations or discussions would be reflected in the integrated Sale Agreement that was already part of the record before the district court. (JA 38-54.)

Finally, the Employees wanted discovery regarding the Plan Administrator's use of "the novel 'close relationship' and 'close nexus' terms, and "the Plan Administrator's rationale that the 'intent' of the Plan was to 'cover a period of unemployment.'"[10] As discussed above at pages 19 and 20, however, the sources

---

[10] The Employees also want discovery on what they vaguely refer to as the Plan Administrator's "apparent conflict of interest" (Appellants' Br. at 23-24), but the district court acknowledged this conflict, correctly identified its impact on the case, and found that "the existence of such a conflict, alone, will not displace the countervailing reasonableness of the Plan Administrator's denial of benefits." (JA 125-126). The Employees offered no reason to believe that their requested fishing expedition would yield evidence of a conflict so profound that it would be

24

of these terms are no mystery, and discovery into them could not defeat summary judgment in any event.[11]

## V.
## <u>CONCLUSION</u>

For all of the foregoing reasons, the judgment of the district court should affirmed.

---

sufficient "by itself" to preclude summary judgment.  Indeed, Exelon is a multi-billion dollar public corporation for whom the payment or nonpayment of the benefits at issue here is self-evidently not significant.

[11]  The Employees' request for discovery outside the plan documents is also undermined by their argument that "plan administrators [must] look solely at the 'directives of the plan documents' in determining how to disburse benefits."  (Dkt. 17 at 6, emphasis added.)

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1) and Local Rule 34(a), Appellees respectfully request that the Court hear oral argument in this case.

Because of the nature of the issues presented, this case is particularly appropriate for oral argument.  Appellees believe that oral argument will aid the Court in sharpening the legal questions presented in this important area.

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


 /s/ Azeez Hayne